SARAH E. MITCHELL'S LESSEE *vs.* HENRY S. MITCHELL.—
*December,* 1849.

Where a party includes in his claim and pretensions, the whole or any part
of a tract of land, before he can offer evidence of title thereto, the lines of
the entire tract must first be located upon the plats.

But if he seeks, by the location of particular boundaries or lines of an adja-
cent tract, to elucidate or support the locations of the lands he claims, or
locations he may have made as auxilliary thereto, he need only locate such
particular boundary or lines.

Where the beginning and other boundaries of a tract are lost, so that it is
insusceptible of location by the ordinary means, a boundary or boundaries
thereof may be proved by the location of a junior survey, whose lines call
for such lost boundaries as the *termini* thereof.

If all the boundaries common to both surveys are lost, save one, which can
be identified by its being stated in the junior survey as the beginning of a
third tract, whose beginning can be proved, such proof, with the certificate
of the junior survey, will establish it not only as the boundary of the third
tract, but as that called for in both the senior and junior surveys.

A tract A, calls for a boundary at the *terminus* of its first line, which is also
called for as the end of the third line of B, whose certificate states said
bound to be, also, the beginning of W. If this boundary, or the place
where it stood, be otherwise incapable of proof as a boundary of A, or of
B, it may be established as the boundary of both, by proving it to be the
beginning of W.

At the end of the first line of A, and of the third line of B, a boundary is
established, from which A's second line, by its patent, runs 136 *perches* to
a bounded tree, the actual *situs* of which cannot be proved; but B's patent,
which is junior, runs its fourth line with and binding on A's second line,
139 *perches,* to B's third boundary, " at the end of the second line of A,"
HELD : that the court should have instructed the jury, as a matter of law,
that A's second line terminates at the end of 136 perches, as expressed in
its patent.

A certified copy of a warrant from the land office is admissible in evidence in
connection with the certificate, though the name of the register who issued
it, be not appended to it.

Where a plaintiff located on the plots, for his claim and pretensions, all that
part of a certain tract of land " which was in the possession of *F J M,*"
making no reference as to the time to which such possession related, it is
not competent for him to prove, by witnesses, that *F J M* was in possession
of said lands *for several years prior to his death.*

A witness is incompetent, where it does not appear by the plats and explana-
tions that he had, upon the ground, pointed out to the surveyor the objects
located, as to which he is called to testify.

A will offered not as evidence of location, but of title, need not be located on the plots.

Surveyors, in their explanations, should state what number of degrees they allow for variation; to say that they make the usual allowance for variation is too indefinite.

All the lines of a tract to which the plaintiff lays claim, must not only be truly located on the plots, but must be actually surveyed on the ground.

Original locations, if not counter-located by the opposite party, are admitted to be correct; but a counter-location of a counter-location, is a solecism of which we have no example.

Appeal from *Charles* county court.

This was an action of ejectment instituted by the appellant for twenty-one tracts of land particularly named in the declaration. The appellee, the defendant, being tenant in possession, took defence on warrant.

Upon the execution of the warrant of resurvey, the plaintiff located as his claims and pretensions, four of the twenty-one tracts, viz: "*Mitchell's Lot*," "*Wheeler's Rest*," "*Mitchell's Lot Resurveyed*," and "*Wheeler's Addition*." He also located a parcel of land described in the explanation of the surveyor as "all that part of "*Wheeler's Rest*" which was in the possession of *Francis J. Mitchell*," and also made numerous locations *for illustration* of lines and boundaries which, in the explanations of the surveyor, accompanying the plots, are said to be "wholly lost and incapable of location." The defendant counter-located all the plaintiff's locations, and made specific locations of the lines and boundaries alleged to be lost and incapable of location.

The plots and accompanying explanations are not introduced into this statement, because it is thought they are sufficiently explained in the exceptions and opinion.

1st EXCEPTION. The plaintiff having offered in evidence the plots and explanations, proved by the surveyor that the patents for "*Mitchell's Lot*," "*Wheeler's Addition*," and "*Wheeler's Rest*," are truly located on the plats, as claimed by the plaintiff, and that the certificate of "*Mitchell's Lot Resurveyed*," is also truly located, but that he only ran by actual survey the first ten lines thereof, and located the remaining

lines by laying them down on the plots according to courses and distances, and that the same result would be obtained on the plots, and these lines would be located in the same way, if he had run them by actual survey on the ground. He also stated, on cross-examination, that he never ran, by actual survey, the lines of "*Mitchell's Lot*," but located the same on the plots by courses and distances. The plaintiff then read the depositions of *Samuel Ward*, now deceased, regularly taken on the 17th of June, 1846, in a cause between the plaintiff and defendant, for another tract of land, proving that the point A, where the witness was sworn, and where stand a stone and post, was the beginning boundary of " *Wards Delight*," and also a boundary of "*Stanley Enlarged;*" and then proved by the surveyor, that he was present when said *Ward* was sworn in that cause, and that the point A is the same as that located by the plaintiff in this case, as the second boundary of "*Stan-ley Enlarged.*" He then read in evidence the patent of "*Stanley Enlarged,*" and proved the location of its second and third lines by course and distance, as laid down upon the plots. He then, further to prove the beginning of " *Ward's Delight* " at the point A, read the depositions of said *Ward*, taken on the survey in this cause, in substance that this point has always been reputed as the beginning of " *Ward's Delight,*" and that it has always been the division boundary of " *Ward's Delight* " and " *Mason's Land,*" as formerly held by the *Masons*. The plaintiff then, for the purpose of proving the second boundary of "*Stanley Enlarged*" to be identical with the beginning of " *Ward's Delight,*" and for the purpose of sustaining the location of the second and third lines of "*Stanley Enlarged,*" and the fourth and fifth lines of "*Mason's Amendment,*" as made by the plaintiff on the plots, offered to read in evidence so much of the certificate of "*Mason's Amendment*" as relates to its fourth and fifth lines, having first proved that the surveyor, by whom this certificate was returned, died in 1845. But the court (MAGRUDER, C. J.,) rejected said offered evidence, and refused to allow said certificate to be read to the jury, and the plaintiff excepted.

2ND EXCEPTION. The plaintiff then offered in evidence the aforesaid certificate, together with a certified copy of the warrant on which the same was founded; but the court refused to allow said certificate and warrant to be read to the jury, and the plaintiff excepted.

3RD EXCEPTION. The plaintiff then proved by the surveyor, that the point B, as located on the plots, is the end of the 2nd line of *"Stanley Enlarged,"* as located from the point A, according to its patent courses and distances; and then offered to read so much of the evidence of said *Ward*, as relates to the point B, to the effect that this was the place where a stone formerly stood, which was a boundary of *"Mason's Land,"* *"Jenken's Land,"* and of a tract witness owns, called *"Arlow,"* for the purpose of proving that a stone formerly stood at B, and that the same was reputed a boundary of three tracts of land; the plaintiff stating that he meant to contend and insist that said stone so referred to by said *Ward*, was the third boundary of *"Stanley Enlarged."* But the court rejected this evidence, and the plaintiff excepted.

4TH EXCEPTION. The plaintiff offered to prove, by *John A. Pye*, a witness sworn on the survey, that he was present, and saw the surveyor run the lines of *"Wheeler's Rest,"* as located on the plots, and the lines of fencing numbered from 21 to 26, referred to in the explanations, and that for several years previous to 1825, when he died, *Francis J. Mitchell* was in possession of all the land included in the lines of that part of *"Wheeler's Rest"* which is located on the plots in the manner stated and described in the 35th and 36th explanations of the surveyor; but the court rejected this evidence, and the plaintiff excepted.

5TH EXCEPTION. To prove title to *"Mitchell's Lot"* in the plaintiff, he offered to read in evidence a duly certified copy of the will of the patentee, at the same time stating, by his counsel, that he meant to follow said offered evidence with further proof to show title in the plaintiff, derived from said patentee; but the defendant objected, because the said will was not located on the plots, and because *"Mitchell's Lot"* was not lo-

cated; and the court refused to allow the will to be read, and the plaintiff excepted.

6TH EXCEPTION. The plaintiff then offered to prove that *Francis J. Mitchell* was, in his lifetime, in possession of all the lands included within the double locations of part of "*Wheeler's Rest*," as located in the 35th and 36th explanations, and died so possessed in March, 1825, leaving a last will and testament, a duly authenticated copy of which he offered to read in evidence, for the purpose of proving that said *Francis J. Mitchell* devised said part of "*Wheeler's Rest*" to *James D. Mitchell*, in fee-simple, at the same time stating that he meant to follow up said evidence by proof to show that his lessor was the sole heir at law of said *James D. Mitchell;* but the court rejected the evidence, and the plaintiff excepted.

7TH EXCEPTION. This last exception was taken by the plaintiff to the refusal of the court to grant six several prayers offered by him, which are stated in the opinion.

The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, SPENCE, MARTIN and FRICK, J.

By PARRAN and BRENT, for the appellant, and
By DIGGES and WM. SCHLEY, for the appellee.

DORSEY, C. J.. delivered the opinion of this court.

Before an opinion can be formed as to the correctness of the court's rejection of testimony, as shown in the plaintiff's first bill of exceptions, it is necessary to ascertain what was the character and object of the testimony rejected. The plaintiff having produced a duly authenticated certificate of a tract of land called "*Mason's Amendment*," (in support of his locations upon the plots,) for the purpose of proving the second boundary of "*Stanley Enlarged*" to be identical with the beginning of "*Ward's Delight*," for the purpose of sustaining his location of the second and third lines of "*Stanley Enlarged*," and the

fourth and fifth lines of "*Mason's Amendment*," "thereupon offered to read in evidence so much of the certificate of "*Mason's Amendment*" as relates to its fourth and fifth lines as by him located;" but the court rejected the said offered evidence, and refused to allow the said certificate to be read to the jury as evidence in the cause. In this refusal the counsel for the appellee insists, that the court below were justified, because the entire tract of land called "*Mason's Amendment*" had not been located by the plaintiff. If the plaintiff had included in his claim and pretensions, the whole or any part of the tract of land called "*Mason's Amendment*," and sought its recovery as such before he could offer evidence of title thereto, the lines of the entire tract must first be located upon the plots. But if, as in the case before us, he seeks, by the location of particular boundaries or lines of an adjacent tract of land, to elucidate or support the locations of the lands to which he asserts title, or locations he may have made as auxiliary thereto, all that he need do is to locate the particular boundary or lines whose tendency is to sustain his other locations. As establishing the principle relied on by the appellee, in support of the county court's refusal, no authority has been referred to, and it is believed none can be found. The principles which govern locations upon plots, are founded upon reason, justice, expediency, and a due regard to the interests of suitors; none of which can be invoked in support of the doctrine now contended for by the appellee. Its necessary result would be uselessly, inordinately, and without any imaginable beneficial object to inflame the costs of litigation in almost all cases where locations of land on plats are resorted to.

Of the materiality of the testimony refused, if received, there surely cannot be a doubt, as it states that the boundary at the beginning of "*Ward's Delight*" is the second boundary of "*Stanley Enlarged*," and that the fourth line of "*Mason's Amendment*" runs with and binds on the second line of "*Stanley Enlarged*" to its third boundary, at the end of said second line, and that the fifth line of "*Mason's Amendment*" runs with and binds on the third line of "*Stanley Enlarged*" for

its entire length of one hundred and twenty-five perches. It is true, there is a slight discrepancy between the courses of the second and third lines of *"Stanley Enlarged,"* and those of the fourth and fifth lines of *"Mason's Amendment;"* but it is apparent, by adverting to the dates of the certificates of survey of the two tracts of land, such diversity is nothing but the result of that reasonable and proper correction for the variation of the compass, as it is ordinarily called, which the surveyor who located *"Mason's Amendment,"* found it necessary to make, in order to bind its fourth line on the second line of *"Stanley Enlarged,"* to its boundary at the end thereof, and to make the fifth line of the former tract conform to the true original location of the third line of the latter tract. It is also true that the fourth line of *"Mason's Amendment"* calls to run three perches further than the line on which it binds, and with which it professes to terminate, to reach the third boundary at the end of the second line of *"Stanley Enlarged."* But this incongruity is no ground for the court's refusal to suffer the certificate of *"Mason's Amendment"* to be read to the jury to sustain such locations as had been made of the boundaries and lines thereof. Nor did it interpose the slightest obstacle to the accomplishment of the designs contemplated by the plaintiff in making such locations. Where the beginning tree, and also other boundaries of a tract of land are lost, and it is thereby rendered insusceptible of location by the ordinary means of proving any of its boundaries, *ut res magis valeat quam pereat,* that the owner may not lose his land for which he hath paid, and the State received, a full equivalent, the court will permit a boundary or the boundaries thereof to be proved by the location of a junior survey, the lines of which call for such lost boundaries as the *termini* thereof, by the proof that the objects called for are the boundaries of such junior survey, or by proof of the spots where such boundaries stood. But if all the boundaries called for, as common to both surveys, are lost, save one, which can be identified by reason of its being stated, in the junior survey, as the beginning of a third tract of land, the beginning of which can be proved,

such proof, with the certificate of the junior survey, will be sufficient to establish it, not only as the boundary of the third tract, but as that called for in both the senior and junior surveys. To apply this to the case before us: "*Stanley Enlarged*" calls for a boundary at its beginning, and also at the terminus of its first line, which latter boundary is called for as at the end of the third line of "*Mason's Amendment*," the certificate of which states said boundary to be also the beginning of "*Ward's Delight*." If the boundary or place where it stood be otherwise wholly incapable of proof as a boundary of "*Stanley Enlarged*," or of "*Mason's Amendment*," it may be established as the boundary called for in both those surveys, by proving it to be the beginning of "*Ward's Delight*."

The plaintiff having, by thus connecting the testimony of *Ward* with the certificate of "*Mason's Amendment*," obtained evidence which would warrant the jury in finding it as designated on the plots, to be the boundary expressed in the patent of "*Stanley Enlarged*," as standing at the end of its first line, how is the end of its second line, at which, as declared in the patent, stood a bounded oak, to be ascertained? All proof being unattainable as to the actual *situs* of this tree, either as a boundary of "*Stanley Enlarged*," or "*Mason's Amendment*," by reason of the county court's properly rejecting the testimony of *Ward*, as offered in the third bill of exceptions, for reasons which shall be hereafter assigned, is the end of the second line of "*Stanley Enlarged*," to be run with the fourth line of "*Mason's Amendment*," one hundred and thirty-nine perches, or is it to terminate at the end of one hundred and thirty-six perches, as expressed in the patent of "*Stanley Enlarged?*" At the latter point it must terminate; the court, as a matter of law, should so instruct the jury. And at that point the boundary may, perhaps, be regarded to have stood until the contrary is made to appear. The adoption of this well established principle of law, strongly recommends itself as the means by which the greatest certainty is attained in making such a location. It can then be made in but one way. But, if departing therefrom, you, in such case, adopt the course and

distance lines of other surveys with calls like the present, incapable of the ordinary proof to establish them; you may have two or more junior surveys locating the line and lost boundary in different ways and at different distances, leaving the jury without any fixed rule, confining them to the adoption of any one, or either of those locations; and thus that, which for the benefit of landholders the law has made certain, is submitted to the uncontrolled and uncertain finding of a jury. The county court erred in its exclusion of the certificate of *"Mason's Amendment"* for the purpose for which it was offered, from the consideration of the jury.

The court below erred (for the reasons assigned in the examination of the first bill of exceptions,) in rejecting the testimony offered in the second bill of exceptions. The certified warrant from the records of the land office, was clearly admissible as evidence in connection with the certificate of *"Mason's Amendment,"* with which it was offered. The effort to sustain the opinion of the county court, because the copy of the record of the warrant under which the certificate of survey of *"Mason's Amendment"* was made, does not appear to have been signed by the register of the land office, is of no avail; the certified copy of the warrant being truly taken from the record book of the land office, in the recording of which warrants the names of the registers issuing them are not appended. Had it been the original warrant of the surveyor which was offered in evidence, it would have presented a very different question. Had the plaintiff located A and B as the boundary of *"Mason's Land,"* and the fourth and fifth lines of *"Mason's Amendment"* as the fourth and fifth lines of *"Mason's Land,"* and that the boundaries spoken of by the witness, *Ward,* as boundaries of *"Mason's Land,"* meant boundaries of *"Mason's Amendment,"* which was known as *"Mason's Land;"* and had not the county court erroneously rejected as evidence the certificate of *"Mason's Amendment,"* it could not have been doubted, for a moment, that the testimony offered in the plaintiff's third bill of exceptions was admissible for the purpose for which it was offered. But such locations not hav-

ing been made, and the certificate of "*Mason's Amendment*" being excluded as evidence, there was no location of the plots which could be sustained by the rejected testimony, or to which it could be legitimately applied. The county court, therefore, could not err in rejecting it under the circumstances in which it was offered.

The fourth bill of exceptions presents the isolated question, whether *John A. Pye* was a competent witness to prove the facts to which he was offered to testify? The county court decided that he was not, and in that decision we entirely concur, for several reasons. The first is, that the plaintiff's locations of his claim and pretensions, in support of which the proof was offered, did not warrant the production of such testimony. The proof rejected was, that *Francis J. Mitchell*, for several years previous to the year 1825, when he died, was in the possession of all the land included in the lines of that part of "*Wheeler's Rest*" which is located on the plots, in the manner stated and described in the 35th and 36th explanations of the plaintiff's locations. The explanations referred to, as stated by the surveyor, opened the door to the admission of no such proof. It was stated therein, that the plaintiff locates for his claim and pretensions, all that part of "*Wheeler's Rest*" which was in the possession of *Francis J. Mitchell*, beginning, &c., &c. It made no reference as to the time to which such possession related. For aught that appears in the explanations by the surveyor, it might as well have referred to a possession of *Francis J. Mitchell*, which occurred five, ten, or twenty years before his death, as to one that existed at the time thereof. The object of the locations in question, may have been to let in the proof of *Francis J. Mitchell's* dying seized of the land included within them. But that object does not sufficiently appear in the explanations of the surveyor, (which ought substantially to embody the plaintiff's instructions on that subject,) and, therefore, the defendant was under no obligation to counter-locate, or disprove such dying seized of *Francis J. Mitchell*. There was no such issue presented by the plots and explanations in the cause, and, consequently, no

such testimony was admissible before the jury. The second reason why the evidence offered should not have been received by the court is, that it did not appear by the plots and explanations in the case, that the witness produced to be sworn on the trial, had, upon the ground, pointed out to the surveyor the possessions and objects located on the plots, as to which he was called on to testify. The defendant, on that account, having no reason to anticipate his appearance as a witness at the trial, had no means of excluding him as an interested witness, if he were so, by locating his interest upon the plots. A third reason is, that the witness was offered to prove locations on the plots, of which the explanations do not show that he had any knowledge, or the means of obtaining it. It is true that the witness states he was sworn on the survey, (but where, or for what purpose, *non apparet*,) and saw the surveyor run the lines of "*Wheeler's Rest*," as located on the plots in this cause, and the lines of fencing numbered 21, 22, 23, 24, 25, 26, on the plots, and referred to in explanations; but these are facts which, for the most part, should appear on the plots and explanations, and of which the surveyor has knowledge, and should be permitted to speak, not the witness.

The county court erred, as is shown in the fifth bill of exceptions, in refusing to permit the duly certified copy of *Samuel Mitchell's* will to go to the jury, under the circumstances which attended its offer, as evidence. In the motion for its rejection by the counsel for the defendant, two reasons were assigned, but neither of them were sustainable. The first was, that it was not located on the plots. No such location was necessary. It was offered not as evidence of any location, but as evidence of title. It conveyed all the estate of the patentee in the entire tract of land to a devisee, under whom the plaintiff claimed title. That in such a case, such a title paper of a party need not be located, it cannot at the present day, be necessary to refer to authorities. The second ground of objection was, because "*Mitchell's Lot*" is not located. For this ground of objection there is no foundation in fact. It was located as appears by the plots and explanations in the cause, which were

in evidence to the jury, and the patent thereof, without objection had been read to them in support of such location, as will appear by referring to the plaintiff's first bill of exceptions.

The county court were warranted in rejecting the testimony offered in the plaintiff's sixth bill of exceptions, for the first reason hereinbefore assigned for the rejection of the evidence offered in the fourth bill of exceptions.

The plaintiff's seventh bill of exceptions (after the testimony had been given to the jury,) was taken to the refusal of the court below to grant each and all of six separate, distinct prayers of the plaintiff. The first of which was, "that there is competent evidence for the consideration of the jury, of the true beginning of *"Mitchell's Lot,"* as located by the plaintiff in the plots and explanations in this cause."

The plaintiff's instructions to the surveyor, as is shown by his 13th explanation, state the beginning of *"Mitchell's Lot Resurveyed"* can only be found by reversing its nine first lines from the letter B, marked on the plots as the termination of the second line of *"Stanley Enlarged,"* where its third boundary is described as having stood. For the purpose of ascertaining whether this first prayer of the plaintiff ought to have been granted, had all the testimony legally admissible, as stated in our comments on the first bill of exceptions, been before the jury, we necessarily assume the certificate of *"Mason's Amendment"* as having been before them. That being assumed, it is regarded as sufficiently established by proof to enable the jury to find that A is the second and B is the third boundary of *"Stanley Enlarged,"* or, which is the same thing in the present condition of that tract, are the *termini* of its first and second lines. Its patent called for but three boundaries; one at the beginning, and the other two respectively at the ends of its first and second lines. Its beginning is to be found by reversing its first course from A, the number of perches given it by the patent. The ninth line of *"Mitchell's Lot Resurveyed,"* is described as running to "a stone fixed in the earth," "a boundary of a tract of land called *"Stanley Enlarged,"* thence with said *"Stanley Enlarged"* north eighty-eight degrees,

twenty-seven minutes, east one hundred and twenty-five perches." The call of the ninth line of "*Mitchell's Lot Resurveyed,*" being "to a boundary of "*Stanley Enlarged,*" and its appearing that there are three boundaries to that tract of land, the question necessarily presents itself, at which of said boundaries does this ninth line terminate? All doubt upon the subject will at once vanish by a comparison of the courses and distances of the three first lines of "*Stanley Enlarged*" with the tenth line of "*Mitchell's Lot Resurveyed.*" The boundary called for, cannot be either the beginning or second boundary of "*Stanley Enlarged,*" because by thus locating the ninth line of "*Mitchell's Lot Resurveyed,*" in running its tenth line, you must either wholly disregard its imperative binding call, or entirely violate its expressed course and distance. But, by making this ninth line to end at the ninth boundary of "*Stanley Enlarged,*" there is a perfect identity both in course and distance, between the third line of "*Stanley Enlarged,*" and the tenth line of "*Mitchell's Lot Resurveyed,*" (the proper allowance for variation being of course made,) and the binding expression as to the latter line is gratified to the letter. There cannot, then, be a rational doubt as to the boundary called for as the *terminus* of the ninth line of "*Mitchell's Lot Resurveyed,*" and by the reversal of the nine first lines of this survey from the letter B, the surveyor tells us he has found its beginning at the point marked on the plots at the letter D. In thus proving the beginning of "*Michell's Lot Resurveyed,*" the beginning of "*Mitchell's Lot*" is also established; the former tract being a resurvey upon the latter, and calling to begin at its beginning. It is manifest, then, that it would have been "competent evidence for the consideration of the jury, of the true beginning of "*Mitchell's Lot,*" as located by the plaintiff in the plots and explanations in this cause," upon the hypothesis assumed as to the survey, locations and testimony before the jury. The beginning of "*Mitchell's Lot*" being ascertained, it could be easily located, having none but course and distance lines from its beginning.

The plaintiff's second prayer was, "that it is competent for the jury, upon the evidence aforesaid, to find the second boundary of "*Stanley Enlarged*" to be at A, the termination of its second line to be at B, as located by the plaintiff." After the views expressed in the preceding part of this opinion, upon the hypothesis assumed as to the testimony and locations in the cause, the propriety of granting this prayer cannot be the subject of a momentary doubt.

And, upon the same assumption, it is equally manifest that the plaintiff's third prayer ought to have been granted, which was, "that if the jury shall find that the stone which is called for at the end of the ninth line of "*Mitchell's Lot Resurveyed*," stood at the end of the second line of "*Stanley Enlarged*," and that said second line terminated at B, then it is competent for the jury to find the lost beginning of the certificate of "*Mitchell's Lot Resurveyed*," by reversing the nine first courses thereof, according to their patent, courses and distances from the termination of said second line of "*Stanley Enlarged*," as located by the plaintiff at B." If the jury should find the facts made the basis of this prayer, not only were they competent to find as stated in the prayer, but if applied to for that purpose, it was the duty of the court to have instructed the jury, that they were bound to find the beginning of "*Mitchell's Lot Resurveyed*," at the point where the said nine reversed lines terminated.

The fourth prayer was, "that if the jury shall find the beginning of "*Mitchell's Lot Resurveyed*" to be at D, as claimed by the plaintiff, then it is competent for the jury to find the same place to be the beginning of "*Mitchell's Lot*." The finding of this prayer upon the assumption stated in the first bill of exceptions, could not form a subject for controversy, as "*Mitchell's Lot Resurveyed*," by its certificate, explicitly declares its beginning to be "at a bounded white oak," the original beginning of "*Mitchell's Lot*."

The fifth prayer of the plaintiff is, "that if the jury find the beginning of "*Mitchell's Lot*" to be at D, as located by the plaintiff, then it is competent for the jury to reverse from said

D the four first lines of *"Wheeler's Addition,"* according to their patent courses and distances, to find the lost beginning of *"Wheeler's Addition."* Upon the assumption hereinbefore mentioned, it is apparent that this prayer ought to have been granted, if we refer to the patent of *"Mitchell's Lot,"* which describes its beginning to be *"*a bounded white oak, standing in a bottom at the end of the south-south-east sixty perches line of the said *"Wheeler's Addition,"* which said line, by reference to the patent of *"Wheeler's Addition,"* is shown to be the fourth line thereof, and professes to run "south-south-east sixty perches to a bounded white oak."

When speaking of finding boundaries by running, or reversing lines according to their courses and distances, it is not meant that they are to be run according to such courses as are now shown by the point of the needle, but that the lines are to be run with such allowance for variation as, according to the testimony before them on the subject, the jury shall believe will best conform to the true original locations thereof. The instructions of the party, or rather the explanations of the surveyor, should show with what number of degrees of allowance for variation the lines of the several tracts were run, there being no known boundaries to control either the course or the distance. To say that they were run with the usual allowance for variation, is too indefinite, it does not give to the opposite party the notice to which he is entitled. But, it not plainly appearing that any such point was raised or decided in the court below, no such question can have any influence upon this court's opinion on the appeal now before it.

As a ground on which the opinions of the court below should be sustained, it has been urged that, as is shown by the testimony of the surveyor, the ten first lines only, of *"Mitchell's Lot Resurveyed,"* were actually run upon the survey; but that the residue of its lines were simply located upon the plots according to their courses and distances, and that the same result would appear upon the plots by such a location, as if their location had been transferred to the plots after his actual running of the same, under the warrant of resurvey issued in this

cause. *"Mitchell's Lot Resurveyed"* being a part of the claim and pretensions of the plaintiff, all its lines ought not only to be truly located upon the plots, but they ought to have been actually surveyed under the warrant, that the defendant may see, upon the ground, the extent of the complainant's claim, and be, by reason thereof, the better enabled to make his arrangements to defend himself against it. The mere location upon the plots of the plaintiff's claim, communicates to the defendant little or nothing of that information which ought to be given him before he can be called on to assert his rights. By the mere inspection of the plots, he cannot be presumed to know what portion, or whether any of his land is sought to be wrested from him. He can only be assumed to possess such knowledge where there has been an actual survey of the plaintiff's lands in his presence, or where he has a right to be present, that are to be the subject of controversy in the cause. But none of the prayers or bills of exceptions in this cause raise any such question. The correctness of the location of the first ten lines, only, of *"Mitchell's Lot Resurveyed,"* are brought up in review before this court, and they, as a location for illustration, it is shown, were extended to the plots after an actual survey.

Another and yet more formidable obstacle to the plaintiff's right to recover, if maintainable, has been insisted on in behalf of the defendants, viz: that all the locations made by the defendant, of the various tracts of land and boundaries which the plaintiff, by his previous locations, or, perhaps, rather his instructions to the surveyor, which have been set forth in the explanations, as well for the information of the defendant as others, are admitted to be true, by reason of their not being subsequently counter-located by the plaintiff. If this admission can be fairly deduced from the plots and explanations of the surveyor, then, indeed, are most, if not all of the locations made by the plaintiff falsified and disproved, because locations of the various tracts of land, made either for illustration or as showing title, do not conform to the calls and expressions in the several grants for such tracts of land as located by the de-

fendant, and which, as is alleged, the plaintiff admits to be true. The object of a party in making original locations, either for illustration or as showing title, is, that he may prove them, if necessary, for the establishment of his claim and pretensions. And if such locations are not counter-located by the opposite party, their correctness is admitted. Counter-locations are made for different purposes, sometimes with a view to their being sustained by proof on the trial, but very frequently as the mere negation of an admission, a notification to the opposite party that these locations are not admitted, and that at the trial he must be prepared to prove them. The locations made by the plaintiff on the plots and explanations in this cause, in respect to the lost boundaries and tracts of land called for, and incapable of location, by reason of their boundaries being lost, were all that, under the circumstances of this case, the defendant had a right to require as the basis of his counter-locations; and the plaintiff was under no obligation to counter-locate such counter-locations of the defendant, to repel the inference of the admission of the truth of their location. A counter-location of a counter-location would be a solecism for which we have no example. What, then, is the character of the locations of the defendant in this cause, which are said to be admitted, because not counter-located? The defendant himself, who must be supposed to understand their nature and design in the explanations of the surveyor, which are but an echo of the defendant's instructions, calls them throughout, not the *locations*, but the *counter-locations* of the defendant. But let him have called them what he may, no other counter-location of them could be required of the plaintiff than he has already made. As parts of his original locations, he has, through the surveyor's explanations, *a priori*, given notice to the defendant, that the boundaries and tracts of land subsequently located by him are lost, and are wholly insusceptible of location. Is not this substantially as full a denial in advance of any locations the defendant may make, and as distinct a notification that should he make such locations, he must come prepared to prove them, as any counter-locations thereof that could be

made by the plaintiff? Besides, the statements thus made by the plaintiff, must be regarded as true until the contrary is shown. Would it not, then, under the circumstances in this case, be regarded as preposterous in the extreme, to require the plaintiff to make, as true locations, what we know he cannot possibly make, or to make mere fanciful locations to notify the defendant of what he has already been fully informed? Might it not, also, with some plausibility, be contended, that if the plaintiff does make locations of those lost boundaries and tracts of land, that all his other locations must be made to conform thereto, and thus the difficulties interposed to the recovery of his just rights, would be quadrupled, if not rendered wholly insurmountable. The introduction of such a doctrine into the ejectment law of *Maryland*, is utterly inconsistent with those sound principles of reason, justice, economy and expediency, which lie at its foundation.

The county court having excluded from the jury the certificate of "*Mason's Amendment*," and the plaintiff not having made the locations specified in the commencement of our remarks upon the third bill of exceptions, it follows that there is no error in the ruling of that court in the third, fourth, sixth and seventh bills of exceptions taken by the plaintiff. Concurring with the county court in its decisions as stated in the third, fourth, sixth and seventh bills of exceptions, but dissenting from those decisions as appearing in the first, second and fifth bills of exceptions, its judgment should be reversed, and a procedendo awarded.

<div style="text-align:right">

JUDGMENT REVERSED, AND

PROCEDENDO AWARDED.